## THE MOUNT DESERT.

(Circuit Court of Appeals. Fourth Circuit. November 4, 1909.)

### No. 814.

MARITIME LIENS (§ 11*)—REPAIRS—EFFECT OF CHARTER PROVISIONS.

    A chartered vessel *held* subject to a maritime lien for the cost of repairs made necessary by a collision and ordered and superintended by the owner in a foreign port, which also sued for and collected damages for the collision from the vessel in fault, notwithstanding provisions of the charter party that supplies and materials furnished to the vessel should be on account of the charterer, and that she should be redelivered in sound condition, ordinary wear and tear excepted.

    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 15; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

---

Suit in admiralty by Smith & McCoy and the Norfolk Marine Railway Company, intervener, against the steamer Mount Desert. Decree for libelant and intervener, and claimant appeals. Affirmed.

For opinion below, see 158 Fed. 217.

Floyd Hughes, for appellant.

Edward R. Baird, Jr., and Harry E. McCoy, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

PER CURIAM. In the spring of 1907 the steamer Mount Desert of New York, owned by the Beebe Steamboat Company, Inc., a New York corporation, was chartered to the Tidewater Navigation Company, Inc., a Virginia corporation, for a term of six months for the purpose of carrying passengers between Norfolk and the Jamestown Exposition. The steamer was delivered to the charterer at Norfolk by the owner in accordance with the charter. Within a few days after her delivery she was seriously damaged as she lay at her wharf by a collision with the steamer Woodbury, belonging to the Old Dominion Steamship Company. It was important that she should be promptly repaired for the sake of both the owner and the charterer.

It was evident to the charterer that, within a few days after she was damaged, there would be unusually good business for her, lasting about three days, in connection with the Exposition. Hence it was desired by the charterer that temporary repairs be at once made so as to get the benefit of this exceptional business; the permanent repairs rendered necessary by the collision to be made after it was over.

The charter provided:

"That in the event of loss of time from breakdown of machinery, or damage preventing the working of the vessel for more than twenty-four hours, not caused by charterers' fault, the payment of hire shall cease until she be again in an efficient state to resume her service."

The damaged condition of the Mount Desert could not be charged to the fault of the charterer. Hence the owner would lose the hire so long as the steamer was not in condition to carry passengers. She was taken to the yard of the Norfolk Marine Railway, and temporary repairs made there at a cost of $194.01. A few days later the steamer was taken to the yard of Smith & McCoy, the libelants, and permanent repairs put on her at a cost of $1,187.18.

The Tidewater Navigation Company had, before the steamer was sent to Smith & McCoy's, asked for proposals for the repairs, and Smith & McCoy had agreed to do the work according to the specifications for $905.

Soon after the arrival of the steamer at Smith & McCoy's yard, George W. Beebe, representing the Beebe Steamboat Company, the owner of the Mount Desert, came to the yard and ordered Smith & McCoy to go ahead with the repairs, as they were the lowest bidders, and to get them done as soon as possible, as he did not want to lose any more charter money than he could help.

Beebe said nothing to any one, either before the repairs were made or while they were being made, about the Tidewater Navigation Com-

pany being responsible for the cost of the repairs. The charter provided that notice should be given by the charterer to all persons furnishing supplies and materials to the steamer that they were furnished for account of the charterer, and that the owner should not be held responsible for them. No such notice was given at any time, while the steamer was being repaired. The ownership of the steamer was not discussed in connection with the repairs, so far as the libelants and the Norfolk Marine Company were concerned. The repairs were in due time finished, and although it was thought by some of those interested in the steamer, from certain things which occurred immediately after the collision, that the owners of the Woodbury might pay for the repairs, they at the last denied liability and refused to pay. The libel in this case was then filed by Smith & McCoy against the Mount Desert for the recovery of their claim for repairs. An intervening petition was also filed by the Norfolk Marine Railway Company asking a decree in its favor for $194.01, the amount of its claim. An answer was filed on behalf of the Beebe Steamboat Company claiming that the Tidewater Navigation Company, as charterer of the Mount Desert, was alone responsible for the cost of the repairs made on the steamer.

A libel had been filed in the United States District Court at Norfolk by the Beebe Steamboat Company, owner of the Mount Desert, against the steamer Woodbury to recover the damages caused by the collision between the two vessels. The amount claimed in this action against the Woodbury was placed at $5,000, and was intended to cover the cost of the repairs made by the libelants and petitioner in this case, as well as demurrage for the time lost by reason of the collision and other items of damage attributable to the collision. George W. Beebe made the affidavit to this libel. That case was afterward compromised upon payment by the owner of the Woodbury of $2,000 to Messrs. Riddleberger & Roper, attorneys for the Beebe Steamboat Company. The Beebe Steamboat Company had been previously consulted and given its consent to the settlement and the dismissal of the suit. The money received from this settlement was paid by the attorneys of the Beebe Steamboat Company to the Atlantic Trust Company of Norfolk. This company was surety on certain bonds given by the Tidewater Navigation Company. The navigation company had become insolvent before the settlement of the Woodbury case was made or the money paid, and had made an assignment of all its assets to the said trust company. The object of paying the money received in this settlement to the Atlantic Trust Company does not clearly appear, but one of the attorneys who so paid says:

"I turned it over to them subject to any rights that Capt. Beebe might have in that fund, to protect him against loss."

In the District Court below a decree was entered in favor of Smith & McCoy and the Norfolk Marine Railway Company, from which this appeal was taken.

This action in rem is based on the contention by the libelants that the repairs were made upon the credit of the vessel and owners, and that the libelants, therefore, have a lien against the Mount Desert for their claims; while the owner insists that the repairs were made upon

the credit of the Tidewater Navigation Company, the charterer. By the terms of the charter all supplies and materials furnished the steamer were for account of the charterer. No mention is made of repairs, although it is provided that the hire was to continue until her delivery to the owner in the same good condition as when received by the charterer, ordinary wear and tear excepted. The repairs having been made necessary by a collision not caused by charterer's fault, the hire would, according to the special provision of the charter party, hereinbefore quoted, cease until she was repaired and made fit to resume her service. No express provision was made as to which party was to make the necessary repairs in such a case. They were not such repairs as would ordinarily accrue from the use of a vessel.

The action of the owner in having its representative, George W. Beebe, come promptly to Norfolk, and in his ordering Smith & McCoy to make the repairs as quickly as possible so as to save the owner from losing hire, would undoubtedly indicate that the owner felt it was its duty to have the repairs made. The further conduct of the owner was consistent with no other theory. When it came to the point where action had to be taken against the Woodbury to enforce the claim for the collision damages, the Beebe Steamboat Company treated that claim as a debt owing to it and not to the Tidewater Navigation Company. The libel was filed by it, and the affidavit to the libel was made by its representative. In estimating the amount to be recovered in that action, the claims sued on in this case, including the demurrage claim which would be due to the owner of the Mount Desert on account of its losing the hire, constituted the largest part of that amount. Nothing appeared in that suit which would lead any one to suppose that it was for the recovery of damages suffered by the navigation company, and when it came to the settlement the money was paid to the owner of the Mount Desert, through its attorneys, and not to the charterer. In other words, the owner has recovered, in the settlement of its loss, an amount which was satisfactory to it and which it was willing to accept in full of the damages which were chargeable to the collision.

The fact that the owner had full knowledge of the damaged condition of the Mount Desert and sent its representative to Norfolk to see after the necessary repairs, and the further fact that while he was in Norfolk he never gave the slightest intimation to the libelants that they were making the repairs on the credit of the charterer, are convincing proof that Beebe intended to have the repairs made on the credit of the steamer, a foreign vessel, and of the owner whom he represented.

The money which was received from the Woodbury belonged to the owner of the Mount Desert, and the fact that it was deposited by the attorneys for the owner with the Atlantic Trust Company cannot affect the rights of the libelants.

To hold, in view of these circumstances, that the libelants and petitioner cannot recover in this action, would be to allow the owner of the steamer to reap the benefit of the expenditures made by the libelants and petitioner on its property, at its request, and to recover on

account of said expenditures from the offending vessel in the collision case and then to retain the amount so obtained while denying responsibility for the expenditures so made. This would be an act of gross injustice and cannot be upheld.

Under the facts proved in this case, the decree of the District Court was right and is affirmed, with costs.

Affirmed.